*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2026
2:14 PM

Plaintiff-Appellee,

v

No. 371952
Wayne Circuit Court
LC No. 23-002400-01-FH

KEVONTAE JAVON FOLEY,

Defendant-Appellant.

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of failing to stop at the scene of an accident that caused serious impairment or death, MCL 257.617(2). Defendant was sentenced to two years of probation, with the first 90 days to be served incarcerated. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL POSTURE

This appeal stems from defendant fleeing the scene of an accident between a motor vehicle driven by defendant and a dirt bike driven by Maxwell McColl. According to defendant, on September 22, 2022, he was driving at the intersection at Lynn and Oakland in Detroit when he saw McColl driving a dirt bike toward him and strike the driver's side of his vehicle. Defendant watched McColl travel over the hood of defendant's vehicle and fall to the ground. When McColl went over the hood of the vehicle, defendant saw something "fly off" of McColl's waistband. Defendant pulled his vehicle over and saw a woman that had been in another vehicle approaching him quickly. After seeing the woman, defendant looked forward toward McColl lying on the ground and saw a gun near him. Defendant testified that as a result of seeing the approaching woman and the gun, he became afraid and drove away from the scene of the accident after approximately 15 seconds. Defendant admitted that he did not call the police that day or thereafter. He testified that he did not know that was a requirement for him to do so; however, he admitted that he also feared getting in trouble.

McColl testified that he did not remember the accident occurring. According to McColl, he was in possession of a nine-millimeter handgun the day of the accident, and he had a concealed

-1-

pistol license.  He recalled waking up in the hospital after being in a coma for approximately 100 days.  He had suffered a traumatic brain injury, occipital bone fracture, acute subdural hematoma, and a subarachnoid hemorrhage.  He spent a year in the hospital, had various surgeries, and participated in physical, occupational, cognitive, and speech therapy.  Pictures of McColl's injuries were admitted at trial over defendant's objection.

Dr. Steven Miller testified as an expert in the field of forensic psychology on behalf of the defense.  Dr. Miller testified that defendant was fearful and disoriented when the accident occurred.  He also testified that defendant suffered from post-traumatic stress disorder following the accident.  Defendant additionally sought to admit a toxicology report that purported to show that McColl had a positive result for "cannabinoids" at the time the toxicology test was performed.  The trial court denied admission of the report.

After the parties rested, the trial court discussed jury instructions with the attorneys.  The trial court denied defendant's request that the jury be instructed regarding the lesser included offense of misdemeanor leaving the scene of an accident.  During closing arguments, the prosecutor remarked on the absence of Police Officer Rodney Ballinger, who was a missing endorsed witness.  The prosecutor began to describe the testimony she anticipated he would have provided.  The trial court, on its own initiative, cut off the prosecutor's argument, held a bench conference, and instructed the jury to disregard the prosecutor's statements.  Subsequently, the jury found defendant guilty and he was sentenced as previously noted.  This appeal followed.

## II.  PHOTOGRAPHS OF INJURIES

Defendant first contends that the trial court abused its discretion when it admitted photographs of McColl's injuries over defendant's objection.  According to defendant, the photographs should have been excluded under MRE 403 because the admission of the photographs were cumulative and had no effect other than to arouse the sympathies or prejudices of the jury.  We disagree.

The trial court's decision to admit evidence is reviewed for abuse of discretion.  *People v Mullins*, 322 Mich App 151, 166; 911 NW2d 201 (2017).  A trial court abuses its discretion if it selects an outcome outside the range of reasonable and principled outcomes.  *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).  "In reviewing the trial court's decision for an abuse of discretion, the appellate court must view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."  *People v Head*, 323 Mich App 526, 540; 917 NW2d 752 (2018) (quotation marks and citation omitted).

Under the rules of evidence, relevant evidence is generally admissible.  MRE 402.  Under MRE 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "[P]hotographs that are merely calculated to arouse the sympathies or prejudices of the jury should not be admitted."  *People v Howard*, 226 Mich App 528, 549; 575 NW2d 16 (1997).  "However, if a photograph is otherwise admissible for a proper purpose, it is not rendered inadmissible merely because it brings vividly to the jurors the details of a gruesome or shocking accident or crime."  *Id*.

at 549-550. The pertinent question is whether the photographs were "evidence of any fact that is of consequence to the determination of the defendant's guilt and whether the photographs made the existence of certain facts more or less probable." *People v Mills*, 450 Mich 61, 68; 537 NW2d 909 (1995) (quotation marks omitted). Photographs may be admitted to explain or corroborate testimony about the cause of the victim's injury. See *Head*, 323 Mich App at 541.

Defendant was charged with failing to stop at the scene of an accident that caused serious impairment or death, MCL 257.617(2). In order to be convicted of an offense under MCL 257.617(2), the prosecutor must show that in addition to failing to stop at the scene of an accident, MCL 257.617(1), the accident resulted in "serious impairment of a body function or death . . . ." MCL 257.617(2). While the prosecutor did not offer testimony from a doctor or other medical professional to discuss and explain McColl's injuries, the prosecutor did elicit testimony from McColl regarding them. McColl stated that he was in a coma for approximately 100 days and had a large scar on his neck from where tubes were placed. In addition, McColl stated that he had to have four surgeries on his knee and, as a result, could not run, jump, or drive a car anymore. McColl recounted that he received in-home help at least once a week to assist him with chores. Additionally, as a result of the accident, McColl stated that he regularly receives occupational and cognitive speech therapy. Portions of McColl's medical records were also introduced at trial, which stated that he suffered a traumatic brain injury, subdural hematoma, occipital bone fracture, and subarachnoid hemorrhage.

Because the prosecutor was required to show that McColl sustained a serious impairment of a body function, the photographs were relevant to prove that element, as the photographs depict certain injuries sustained by McColl. The photographs also corroborated McColl's testimony and the medical records admitted at trial. See *Head*, 323 Mich App at 541. While the photographs graphically depict McColl after he was initially treated by doctors, the fact that the photographs may be considered "gruesome" does not, standing alone, require that they be kept from the jury. See *Howard*, 226 Mich App at 549-550. Accordingly, the trial court did not abuse its discretion when it admitted the photographs of McColl's injures into evidence.

## III. TOXICOLOGY REPORT

Next, defendant argues that the court abused its discretion when it denied his request to admit McColl's toxicology report. According to defendant, the toxicology report would have shown that McColl was under the influence at the time of the accident. Defendant contends that under the rule of completeness, MRE 106, he should have been permitted to introduce the report as it was part of McColl's medical records, parts of which were introduced by the prosecutor. We disagree.

The trial court's decision to admit evidence is reviewed for an abuse of discretion. *Mullins*, 322 Mich App at 166. Under MRE 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." "The premise of the rule is that a thought or act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990). "MRE 106 has no bearing on the admissibility of the underlying evidence; rather, it allows the adverse party to supplement the

record to provide a complete picture." *People v Clark*, 330 Mich App 392, 421-422; 948 NW2d 604 (2019).

Defendant contends that the toxicology report should have been admitted to supplement McColl's medical records because the toxicology report showed that McColl tested positive for cannabinoids. According to defendant, when someone is intoxicated and suffers a head injury, common reasoning tells us that the injury will be more severe and the recovery process may take longer. For its part, the trial court determined that the relevance of the report was minimal, stating that who was at fault in the accident was not at issue; instead, what happened after the accident was the issue. The court, therefore, found that the report would be more prejudicial than probative under MRE 403.

As an initial matter, defendant made no offer of proof in the trial court regarding the effects of cannabis and traumatic brain injury. On appeal, defendant claims that "common reasoning" demonstrates that cannabis use will prolong or exacerbate the effects of such an injury and may have been one of the causes of the accident in the first place. However, even if true, neither the cause of the accident nor the length of recovery for McColl were relevant to any element that the prosecutor needed to show or that defendant needed to show as an affirmative defense. Under MCL 257.617, fault was not an element that the prosecutor needed to show. See *People v Dumback*, 330 Mich App 631, 637-638; 950 NW2d 493 (2019) (recognizing fault as a distinguishing element between offense under MCL 257.617(2) and the more serious offense under MCL 257.617(3)). Nor was the length of time it takes for an individual to recover a required element. Therefore, the fact that it may have taken McColl longer to recover from the injuries was not relevant to whether he suffered a serious impairment to a body function in the first place. The trial court did not abuse its discretion when it denied defendant's request to admit the toxicology report.

## IV. LESSER INCLUDED OFFENSE

Defendant also argues on appeal that the trial court abused its discretion when it denied his request to have a lesser included offense presented to the jury. Specifically, defendant wanted the jury to be able to consider whether to convict him of misdemeanor leaving the scene, which does not include serious body impairment as an element. We disagree.

We review claims of instructional error de novo. *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009). However, a trial court's determination that a specific instruction is inapplicable is reviewed for an abuse of discretion. *Id*.

Defendants have a right to a properly instructed jury. *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) overruled in part on other grounds by *People v Reichard*, 505 Mich 81; 949 NW2d 64 (2020). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "A lesser offense is necessarily included in the greater offense when the elements necessary for the commission of the lesser offense are subsumed within the elements necessary for the commission of the greater offense." *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not

part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

In the trial court, the jury was instructed to consider whether defendant was guilty of leaving the scene of an accident causing serious bodily injury. M Crim JI 15.13a. Defendant, however, wanted the jury to consider whether defendant was merely guilty of misdemeanor leaving the scene of an accident. M Crim JI 15.13. The substantive difference between these two jury instructions is the element in M Crim JI 15.13a that the accident cause personal injury or serious impairment to a body function. Defendant would be entitled to a lesser included instruction if a rational view of the evidence would support the instruction. *Cornell*, 466 Mich at 357. However, defendant does not explain how this theory would have been supported by the evidence in light of the testimony from McColl regarding the extent of his injuries. Rather, defendant argues that the defense never conceded any element in this case, and, therefore, it was an error for the trial court to refuse the instruction. Defendant also posits that if the jury determined defendant was not at fault in the accident, it could have determined a lesser offense was the proper verdict.

This is not an accurate statement of the law, however, as the issue of "fault" or who caused the accident is not an element of the crime charged. *Dumback*, 330 Mich App at 637-638. In other words, even if the jury believed that McColl caused the accident, it could nevertheless find defendant guilty of leaving the scene of an accident that caused personal injury or serious impairment to a body function. Defendant did not present evidence in the trial court that McColl was not seriously injured as a result of the accident and, therefore, had no entitlement to a jury instruction removing that element from the jury's consideration. Therefore, the trial court did not abuse its discretion when it denied defendant's request for a lesser included instruction under M Crim JI 15.13.

## V. PROSECUTORIAL ERROR[1]

Defendant also argues that the prosecutor erred when she made comments to the jury during closing argument regarding Officer Ballinger. Defendant contends that the prosecutor's comments deprived him of a fair trial because the prosecutor made it appear that the evidence was merely cumulative and also commented on facts that were not in evidence. We disagree.

To preserve a claim of prosecutorial error, a defendant must contemporaneously object to the alleged misconduct. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the prosecutor's statement and has, therefore, failed to preserve this issue for appeal. Unpreserved claims of error are reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. Whether the error affected substantial rights "generally requires

---

[1] "[A]lthough the term prosecutorial misconduct has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of prosecutorial error, with only the most extreme cases rising to the level of prosecutorial misconduct." *People v Jackson*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if a defendant can establish all three requirements, the reviewing court may still "exercise its discretion in deciding whether to reverse." *Id*. In the context of prosecutorial misconduct, reversal is only warranted when a timely instruction would have been inadequate to cure any defect. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003).

This Court assesses claims of prosecutorial error "on a case-by-case basis by examining the record and evaluating the prosecution's remarks in context." *Jackson*, 313 Mich App at 425-426. "[T]he prosecutor is permitted to argue the evidence and all reasonable inferences arising from it." *Id*. at 426 (quotation marks and citation omitted; alteration in original). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). "The prosecutor may not make a statement of fact that is unsupported by the evidence." *Id*. at 67.

During closing arguments, the prosecutor made the following remark to the jury before the trial court cut off the prosecutor:

> I do want to address—[the trial court] will be giving you all a jury instruction about a missing witness. I expected and endorsed police officer to be here to testify at some point over the past two days. Police Officer Rodney Ballinger. Officer Ballinger, the extent of his work on this case, to my knowledge, what was detailed in his report, was that he arrived on scene, medics had already recovered the gun and placed it in their rig, per the report, that's the terminology they used. So it's unclear where the gun was. That's unclear.
>
> Officer Ballinger acquired the gun, actually road [sic] in the rig to the hospital with Mr. McColl and the medics—

There is no question that the prosecutor remarked on facts that were not in evidence when she stated that Officer Ballinger learned the handgun was already recovered by paramedics when he arrived on the scene. Neither Officer Ballinger nor any paramedic testified during trial, and the only evidence that a gun was present at the scene was from defendant's testimony. However, upon hearing the prosecutor's statement, the trial court immediately stopped the prosecutor's closing argument and called the attorneys to the bench. After the conference, the court instructed the jury to "disregard the last statement by [the prosecutor] about Officer Ballinger's involvement in the case." The court explained that the jury "must disregard it and not consider that as evidence in deciding the verdict."

"[J]uries are presumed to follow the instructions of a trial court . . . ." *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Likewise, "instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Moreover, because defendant did not preserve this issue by objecting to the prosecutor's remarks, defendant must show "that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. In the context of prosecutorial error, reversal is only warranted if defendant can show

that the curative instruction was inadequate to cure any defect. *Ackerman*, 257 Mich App at 449. Defendant offers no argument as to why the jury in this case did not follow the court's instructions to disregard the prosecutor's remarks or why the court's instruction did not cure the error made by the prosecutor. Without such a showing, defendant's claim must fail. Accordingly, the trial court did not plainly err when it failed to declare a mistrial sua sponte after hearing the prosecutor's remarks.

## VI. UNANIMITY INSTRUCTION

Next, defendant contends that because the jury had multiple ways in which it could find that the elements of the crime were satisfied, a unanimity instruction was required. Specifically, the jury could have found defendant guilty as a result of either his failure to stop after the accident or his failure to report the accident. Similarly, according to defendant, the jury had multiple ways in which it could have determined that McColl suffered a serious impairment. We disagree.

To preserve a challenge to the trial court's decision to give or not give a specific jury instruction, the party must object or make a request for the specific jury instruction. *People v Sabin (On Remand)*, 242 Mich App 656, 657-658; 620 NW2d 19 (2000). Because defendant did not request a unanimity instruction, this issue is unpreserved for appellate review. *Id*. Unpreserved claims of error are reviewed for plain error. *Carines*, 460 Mich at 763.

The Michigan Constitution requires that juries reach unanimous verdicts in criminal cases. Const 1963, art 1, § 14; see also *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994). "In order to protect a defendant's right to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *Cooks*, 446 Mich App at 511. This requirement is commonly satisfied when the court gives a general instruction on unanimity. *Id*. at 512. A specific unanimity instruction is required in cases in which "more than one act is presented as evidence of the *actus reus* of a single criminal offense" and each act is established through evidence that would lead to juror confusion. *Id*. at 512-513. But "[w]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." *People v Johnson*, 187 Mich App 621, 629-630; 468 NW2d 307 (1991).

To be convicted under MCL 257.617(2), the defendant must have committed all the elements of MCL 257.617(1)—the driver of a vehicle was involved in an accident, knew or had reason to know that the accident occurred, and did not stop or report it—and the accident must have resulted in "serious impairment of a body function or death," MCL 257.617(2). In this case, the jury was instructed by the trial court regarding the charged offense, including that serious impairment of a body function included but was not limited to the following:

> Loss of limb or loss of use of limb. Loss of foot, hand, finger, or thumb, or loss of use of foot, hand, finger, or thumb.

> Loss of an eye or ear or loss of use of an eye or ear.

> Loss of substantial impairment of bodily function.

> Serious visible disfigurement.

A comatose state that lasts for more than three days.

Measurable brain or mental impairment.

A skull fracture or other serious bone fracture.

Subdural hemorrhage or subdural hematoma.

Loss of an organ.

The jury was also given a general instruction on unanimity.

Throughout trial, the prosecutor did not offer alternative acts that would satisfy a particular element. Rather, the crime charged contained alternative theories of criminal liability, in that defendant could be found guilty if he left the scene of the accident or if he failed to report the accident. MCL 257.617(2). To that end, the prosecutor presented distinct evidence of both alternative theories of liability. First, the prosecutor elicited testimony from defendant that he remained in his vehicle, stayed at the scene for approximately 15 seconds, and then left. The prosecutor also elicited an admission from defendant that he never reported the accident.

At its core, defendant's argument regarding unanimity misunderstands the issue of the *actus reus*. Under *Cooks*, 446 Mich at 524, a specific unanimity instruction is only required when the prosecutor cites alternative acts as comprising the single *actus reus* of a crime. In this case, the prosecutor did not present alternative acts for a single *actus reus*, but rather presented two acts that satisfied the two distinct theories of liability described in the statute: leaving the scene and failing to report. The same is true regarding the injury component to satisfy the serious body impairment element. Rather than presenting multiple or alternative acts that would have caused one or more of these injuries, the prosecutor introduced as evidence only the one accident that occurred on September 22, 2022, which caused McColl's injuries. Accordingly, defendant was not entitled to receive a specific unanimity instruction, and the trial court did not plainly err by failing to provide one.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

As alternative theories of relief, defendant also argues that his trial counsel was ineffective because counsel did not move for a mistrial after the prosecutor made the improper remarks during closing and because counsel did not seek a unanimity instruction.

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. When no evidentiary hearing has been held, our review is limited to mistakes apparent on the record. *Id*.

"To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus*, 278 Mich App 174, 185; 748

NW2d 899 (2008). "Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise." *Petri*, 279 Mich App at 410. This Court "will not second-guess matters of strategy or use the benefit of hindsight when assessing counsel's competence." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Moreover, trial counsel has "wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Id*.

## A. PROSECUTORIAL ERROR

According to defendant, his trial counsel rendered ineffective assistance by failing to seek a mistrial after the prosecutor made statements regarding evidence that was not in the record regarding the gun found on the scene. We disagree.

"A mistrial should be granted only if an irregularity that is prejudicial to the rights of defendant occurs and impairs his ability to get a fair trial." *People v Flores*, 346 Mich App 602, 608; 13 NW3d 668 (2023) (quotation marks and citation omitted). "However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial." *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148; 730 NW2d 708 (2007).

As previously noted, the prosecutor made improper remarks to the jury during closing arguments by commenting on Officer Ballinger who did not testify and by commenting on facts that were not in the record. However, before any objection could be made by defense counsel, the trial court stopped the prosecutor, had a bench conference, and instructed the jury to disregard the statement.

In the context of the case, the fact that a gun was recovered was not prejudicial to defendant. In fact, defendant's defense to the case was that he was under duress at the sight of the gun and the woman quickly approaching him. At trial, the only testimony about a gun at the scene was from defendant. Defendant claims on appeal, however, that the statements from the prosecutor "made it sound like the missing witness's testimony was either cumulative or irrelevant to the case." The logical extension of that argument is that defendant believes that Officer Ballinger's proposed testimony would not have been cumulative and would have been relevant to the case. In such a situation, it is not clear why defendant would not have wanted the information to be heard by the jury, and trial counsel may have reasonably believed it was to defendant's strategic benefit for the jury to hear the information. *Odom*, 276 Mich App at 415.

Even if defendant were correct that trial counsel's performance was deficient, defendant cannot show that had trial counsel sought a mistrial, the results of the proceedings would have been different. As previously noted, the trial court immediately stopped the prosecutor's remarks and gave the jury a curative instruction that the jury must disregard the prosecutor's commentary and not consider it as evidence. "[J]uries are presumed to follow the instructions of a trial court . . . ." *Breidenbach*, 489 Mich at 13. Defendant offers no argument as to why, in this case, it appears the jury did not follow the court's instruction. Moreover, defendant does not explain how, even if the jury did not follow the instruction, the verdict would have been different. Therefore, defendant did not receive ineffective assistance of counsel as a result of his trial counsel's failure to seek a mistrial.

## B. UNANIMITY INSTRUCTION

Defendant also contends that his trial counsel was ineffective for failing to seek a specific unanimity instruction. According to defendant, this error was prejudicial to defendant because it allowed the jury to convict defendant on something less than a unanimous verdict. We disagree.

As already discussed, defendant was not entitled to a specific unanimity instruction in the trial court. Defendant was not deprived of the effective assistance of counsel because it is not ineffective assistance to forgo a futile motion. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Even if defendant could show that the decision to not seek a specific unanimity instruction fell below acceptable standards, defendant would still be required to show that there was a "reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Uphaus*, 278 Mich App at 185. On appeal, defendant asserts that counsel's failure caused him prejudice because it did not require the jury to reach a unanimous verdict, but makes no effort to explain why or how the jury would have come to a different result had it been given a more specific instruction. At trial, defendant admitted that he left the scene of the accident after approximately 15 seconds and admitted that he did not make a report to the police about the accident. Under either theory, there was sufficient evidence to find that element satisfied.

The same is true regarding the element that the accident seriously impaired a body function. The jury heard testimony regarding the various injuries suffered by McColl, including that he was in a coma for months and the hospital for approximately one year. Defendant offered no evidence to rebut the evidence of the extent of McColl's injuries. Accordingly, had counsel sought a specific unanimity instruction, the result of the trial would not have been different. *Id*.

Affirmed.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ Michelle M. Rick